**REALEN VALLEY FORGE
GREENES ASSOCIATES**

v.

**UPPER MERION TOWNSHIP
ZONING HEARING BOARD**
and Upper Merion Township

**Appeal of: Thomas J. Timoney, as Receiver for the Hankin Family Partnership and the Hankin Family Partnership.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2007.

Decided Jan. 8, 2008.

Reargument Denied En Banc
March 7, 2008.

John M. Elliott, Timothy T. Myers, and Stewart J. Greenleaf, Jr., Blue Bell, for appellants.

Kevan F. Hirsch and David L. Black, Blue Bell, for appellee, Realen Valley Forge Greenes Associates.

Joseph J. Pizonka, King of Prussia, for appellee, Upper Merion Township Zoning Hearing Board.

BEFORE: McGINLEY and PELLEGRINI, Judges, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Thomas J. Timoney, Esquire, as Receiver for the Hankin Family Partnership, and the Hankin Family Partnership (collectively, Hankin) appeal from an order of the Court of Common Pleas of Montgomery County (trial court) denying Hankin's petition for intervention in a zoning appeal between Realen Valley Forge Greenes Associates (Realen) and Upper Merion Township (Township).[1] In this appeal, we are asked to consider whether (1) under the intervention rules of the Pennsylvania Rules of Civil Procedure, a party who could have joined in an action when initially brought can intervene, even though the interest that entitled that party to intervene no longer exists when intervention is finally sought; (2) in a zoning appeal, a "legally enforceable interest" for a party advancing certain development plans encompasses anything more than an interest in land; and (3) a party's intervention would unduly delay the resolution of a zoning appeal when it possesses no interests that would be directly affected by the litigation.

This appeal involves the 135–acre parcel formerly known as Valley Forge Golf Club (Property) which Hankin owned since the 1920s. Over the last 40 years or so, Hankin's desire to develop this Property and the Township's desire to keep it as open space has spawned litigation to change the zoning of the Property to allow for commercial development, as well as litigation to prevent the Township from taking the Property as a park, all of which came to naught. This latest round of litigation began in 1996 when Realen entered a conditional agreement of sale to purchase the Property contingent on Realen receiving zoning approval to allow commercial development. The final version of the purchase agreement, the Second Amended Purchase

---

1. Upper Merion Township is widely known by its postal designation: King of Prussia.

Agreement, called for Realen to pay a base purchase price of $25,000,000 for the Property, but it also contained "inflators" to this price based on density of development permitted by the anticipated zoning approvals (Additional Purchase Price).

To obtain zoning approval for commercial development, in 1997, Realen filed a validity challenge to the agricultural zoning of the Property with the Township Zoning Board. Realen claimed that the Property's AG District zoning constituted spot zoning, special legislation, and was arbitrary and irrational. Two conceptual site plans were presented with the challenge to illustrate the desired definitive relief—one for a retail/hotel/apartment complex and the other for a retail/hotel/office building plan on the Property (collectively, Challenged Plans). The Zoning Board denied Realen's challenge, which was affirmed by the trial court and then this Court in *In re Realen Valley Forge Greenes Associates,* 799 A.2d 938 (Pa. Cmwlth.2002). Our Supreme Court, however, reversed, holding that the Township's agricultural zoning constituted unlawful spot zoning. *See In re Realen Valley Forge Greenes Associates,* 576 Pa. 115, 838 A.2d 718 (2003). The Supreme Court remanded the matter to the trial court for the grant of "definitive relief" in favor of Realen. Even though Hankin remained equitable owner of the Property throughout those appeals, at no time did it seek to intervene in the matter. On June 24, 2004, Hankin conveyed legal title of the Property to Realen, thereby extinguishing any real property interest it had in the Property.

While the zoning appeal was pending before this Court in 2001, Realen and Hankin filed two actions against the Township—a state court action involving inverse condemnation and a federal civil rights action in which the two parties sought damages (Additional Actions). The parties agreed that those actions were brought to put pressure on the Township to settle the zoning appeal.

After the Supreme Court remanded the land use matter to the trial court, Realen alone pursued a settlement as to what "definitive relief" was appropriate, i.e., what it would be allowed to build on the Property. While settlement discussions were ongoing, on March 18, 2005, Realen brought a declaratory judgment action against Hankin alleging that it was not required to pay any Additional Purchase Price to Hankin (Declaratory Judgment Action).[2]

On May 25, 2005, Realen and the Township filed a joint motion with the trial court seeking approval of a proposed settlement which was later supplanted by a settlement agreement that set forth comprehensive means and methods to be employed by Realen and the Township for the development of a town center, a mix-use community, rather than the Challenged Plans. The settlement agreement, however, was contingent on Realen obtaining dismissal of the Additional Actions in which Hankin was a party plaintiff. It also contained a number of provisions referring to the Declaratory Judgment Action, the Additional Actions, and to Hankin's status.

Believing that its ability to obtain any additional compensation for the Property and maintain the Additional Actions would

2. On February 1, 2006, Realen filed a motion for partial summary judgment in the declaratory judgment action requesting that the trial court determine whether it could settle Hankin's claims for damages against the Township in the Additional Actions. Hankin opposed the motion on the grounds that Realen had not adequately raised that issue in the pleadings. This matter is still pending before the trial court.

be adversely affected if the settlement was approved, in October 2005, Hankin filed a petition to intervene with the trial court in the zoning appeal.[3] Hankin contended that it was entitled to intervene under Pa. R.C.P. No. 2327(3)[4] because as original landowner of the Property, it could have been joined as a party when the zoning appeal was filed, and under Pa. R.C.P. No. 2327(4) because it had a "legally enforceable interest" in the zoning appeal as its resolution could impact its ability to receive additional compensation based on the "inflators" contained in the purchase agreement and would require it to settle the Additional Actions brought against the Township.

■ In denying Hankin's petition, the trial court reasoned that:

3. The right to intervene at the trial court level in this zoning appeal is governed by Section 1004–A of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11004–A, which provides:

> Within the 30 days first following the filing of a land use appeal, if the appeal is from a board or agency of a municipality, the municipality and any owner or tenant of property directly involved in the action appealed from may intervene as of course by filing a notice of intervention, accompanied by proof of service of the same, upon each appellant or each appellant's counsel of record. All other intervention shall be governed by the Pennsylvania Rules of Civil Procedure.

> The rules of civil procedure which apply to interventions are set forth at Pa. R.C.P. Nos. 2326–2350. One wishing to intervene is required to file a petition to intervene, "setting forth the ground on which intervention is sought and a statement of relief or defense which the petitioner desires to demand or assert." Pa. R.C.P. No. 2328. The trial court then must hold a hearing to determine whether the petition to intervene should be granted. Pa. R.C.P. No. 2329. Whether or not to grant a petition is within the discretion of the trial court. *Stanbro v. Zoning Hearing Board of*

• under Pa. R.C.P. No. 2327(3), once Hankin divested itself of all legal and equitable interest in the Property, it correspondingly divested itself of standing to join or be joined as a party in the land use appeal;

• under Pa. R.C.P. No. 2327(4), Hankin failed to identify any legally enforceable interest which could be affected by a decision on approval of the settlement agreement and the proposed plan for development of the Property; and

• the exercise of discretion under Pa. R.C.P. No. 2329(3)[5] would unduly delay final adjudication of the rights of Realen and the Township.

After that decision, on March 30, 2007, the trial court approved the settlement agree-

*Cranberry Township*, 130 Pa.Cmwlth. 84, 566 A.2d 1285 (1989).

4. Pa. R.C.P. No. 2327(3) and (4) provide, in pertinent part:

> At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if
>
> * * *
>
> (3) such person could have joined as an original party in the action or could have been joined therein; or
> (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

5. Pa. R.C.P. No. 2329(3) provides, in pertinent part:

> Upon the filing of the petition and after hearing, of which due notice shall be given to all parties, the court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention; but an application for intervention may be refused, if
>
> * * *
>
> (3) the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties.

ment. Hankin then filed this appeal.[6]

## I.

Hankin contends that the trial court erred in finding that a person seeking to intervene had to have standing when intervention was sought when Pa. R.C.P. No. 2327(3) only requires that the party seeking intervention "could have joined as an original party in the action." Because when the land use appeal was filed Hankin was legal title owner and could have "joined as an original party," Hankin argues that it was entitled to intervene at any stage of that proceeding even though it was no longer the legal title owner of the Property.

 While that language in Rule 2327(3) allows a party to intervene if it could have been originally joined when the action was filed, that does not mean that the party's right to intervene is fixed "forever." In a land use appeal, a party seeking zoning approval must have a real property interest at the time the appeal is sought and must maintain that interest throughout the appeal process; once it no longer possesses an interest in the proper-

ty, the appeal itself must be dismissed as moot.[7] *Gwynedd Properties v. Board of Supervisors*, 160 Pa.Cmwlth. 599, 635 A.2d 714 (1993); *Peach Bottom Township v. Peach Bottom Zoning Hearing Board*, 106 Pa.Cmwlth. 340, 526 A.2d 837 (1987).[8] Just as a land use appellant loses standing to maintain the appeal once it no longer has a cognizable interest, once a party no longer has an interest in the property allowing joinder, it similarly looses its right to intervene. Because a land use appeal resolves how property is to be developed, we agree with the trial court that a party seeking zoning approval must have standing—a real property interest—at the time intervention is sought, not just when the zoning action is initially brought.

## II.

Hankin next contends that it still should have been allowed to intervene under Pa. R.C.P. No. 2327(4) because it has a "legally enforceable interest" as the settlement agreement "may" compromise its financial claims against Realen for additional compensation and its claims against the Township in the Additional Actions[9] or will

6. Our scope of review of a denial of a petition to intervene is limited to determining whether the trial court abused its discretion or committed an error of law. *Atticks v. Lancaster Township Zoning Hearing Board*, 915 A.2d 713 (Pa.Cmwlth.2007).

7. Mootness is the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness). *Town of McCandless v. McCandless Police Officers Association*, 587 Pa. 525, 901 A.2d 991 (2006).

8. *See also Ridley Park Shopping Center, Inc. v. Sun Ray Drug Company*, 407 Pa. 230, 180 A.2d 1 (1962) (developer's appeal of trial court's determination that lessee was legally occupying additional space in building pursuant to oral agreement was rendered moot after developer sold subject property to third

party and had no legal claim to possession of property); *Sunnyside Up Corporation v. City of Lancaster Zoning Hearing Board*, 739 A.2d 644 (Pa.Cmwlth.1999) (corporation lacked standing to appeal when it was divested of interest in land adjacent to the subject property because its option to purchase the adjacent parcel expired). Having a real property interest is necessary to maintain the zoning appeal because, otherwise, the party seeking zoning approval could not implement plans for which that approval is sought as it no longer would own or control the property.

9. Hankin contends that the trial court erred in finding that its cause of action to rescind the purchase agreement and reacquire title to the Property was not a legally enforceable interest. Hankin objects to this determination on the grounds that at the time the trial court issued its decision, it had not yet for-

affect it in ways that are not instantly discernable.

The standard for determining a "legally enforceable interest" for intervening in a pending action under Rule 2327(4) is not as straightforward as it might first appear. As our Supreme Court has long emphasized, "the exact boundaries of the 'legally enforceable interest' limitation [of *Pa. R.C.P. 2327(4)*] are not clear." Consequently, "[t]he result is a flexible, although uncertain rule whose application in a given case calls for a careful exercise of discretion and consideration of all the circumstances involved." Pennsylvania Crime Commission Subpoena, 453 Pa. 513, 520, 309 A.2d 401, 406 (1973); *Pennsylvania Railroad Co. v. Hughart*, 422 Pa. 615, 618, 222 A.2d 736, 738 (1966). In the context of a claim based on an interest flowing from a contract, it is necessary to analyze the exact nature of the "legally enforceable interest" claimed and what claimed rights are legally enforceable under that agreement. *Chen v. Chen*, 586 Pa. 297, 893 A.2d 87 (2006).

■ In this case, for Hankin to make out its Rule 2327(4) claim, it had to establish that its "legally enforceable interest," for the reasons previously set forth, was a real property interest in the land, not some tangential interest(s) that could arise out of business dealings that did not involve the Property. Hankin claims that it

had such an interest because it could receive a premium over the base purchase price under the Second Amended Purchase Agreement depending on the level of development allowed by the zoning appeal. However, Thomas J. Timoney testified that Hankin did not have any rights under the purchase agreement on how Realen was going to develop the Property. Moreover, under the agreement, Realen was not required to obtain final approval from Hankin on its plan to develop the Property, nor was it under any duty to develop the Property to maximize the premium that Hankin would receive. Because under the purchase agreement, Hankin did not have any rights on what was going to be developed, it has not made out a legally enforceable interest that would justify intervention on the basis it may receive any additional premium on the purchase price already paid for the Property.[10]

As to Hankin's contention that approval of the settlement agreement is contingent on Realen settling the Additional Actions and its approval would affect Hankin's rights in the Additional Actions, those actions do not constitute a legally enforceable interest entitling it to intervene because the resolution of this appeal does not terminate those actions. To the contrary, the approval of the settlement agreement is expressly contingent on the discontinuance of the Additional Actions on behalf of Hankin, and whether Realen has the abili-

---

mally filed its action to seek such a remedy, and the trial court improperly determined that possible rescission of the purchase agreement was a future interest that did not warrant intervention. Despite these contentions, it fails to explain how the resolution of the current zoning appeal would affect its interest in relation to its action seeking rescission.

**10.** *See Marion Power Shovel Company v. Fort Pitt Steel Casting Company*, 285 Pa.Super. 45, 426 A.2d 696 (1981), where a striking union and its members sought to intervene in a replevin action brought against their employ-

er/manufacturer by a customer/company that wanted to seize possession of steel castings manufactured by the union members' employer. The union asserted a legally enforceable interest in the steel castings because of "incentive wages" that might have been due to them on the castings. The *Marion Power* court, however, rejected this argument, noting that the union "neither claims nor could claim the right" to possess the castings, which it needed solely as a basis to calculate incentive wages. *Id.,* 426 A.2d at 701.

ty to effect the discontinuance must be determined in those actions, not in this zoning appeal, which, we reiterate, only involves the manner in which the Property will be developed.

### III.

■ Finally, even if Hankin had made out a cognizable reason to allow intervention under either Pa. R.C.P. No. 2327(3) or 2327(4), we agree with the trial court that that intervention still should be denied under Pa. R.C.P. No. 2329(3). Under that Rule, intervention may be denied if "the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay ... the adjudication of the rights of the parties." Hankin maintains that it did not learn of Realen and the Township's May 25, 2005 joint motion to develop a town center and their intentions to resolve the zoning appeal until October 2005, at which time it immediately filed the petition to intervene.[11] Because it did not "idly wait" for the approval of the settlement agreement but rather sought intervention upon learning of Realen and the Township's negotiations, Hankin argues that it did not unduly delay in petitioning for intervention in this matter.

But Hankin did "idly wait" not seeking to intervene until 2006, nine years after the appeal was filed in 1997 and five years after it sought to "encourage" the Township to settle by filing the Additional Actions in 2001. *See London, Inc. v. Fedders Corporation*, 306 Pa.Super. 103, 452 A.2d 236 (1982). Moreover, even if we were to find that its delay in seeking intervention was excusable, Hankin has failed to meet the "second prong" of Rule 2329(3) because the Township and Realen would be prejudiced if 10 years after the action was

commenced and after it went up and down from our Supreme Court, the appeal could not be concluded by allowing Hankin to intervene.

Accordingly, because the trial court did not abuse its discretion in denying intervention, the order of the trial court denying Hankin's petition to intervene is affirmed.

### ORDER

AND NOW, this 8th day of January, 2008, the order of the Court of Common Pleas of Montgomery County denying Hankin's petition to intervene is affirmed.

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

Rule 2327(3) requires that a person not a party to an action be permitted to intervene where the petitioner "could have joined as an original party in the action or could have been joined therein." Pa. R.C.P. No. 2327(3). There is no dispute that at the time the action was filed in 1997, Hankin could have joined as an original party and may have necessarily been joined therein because they owned the Property at that time. The rule speaks to the time the action was filed and is silent with regard to ongoing status.

Nevertheless, assuming that a party must demonstrate a right to intervene at the time intervention is sought, not just when the zoning action is initially brought, Hankin continues to maintain a legally enforceable interest in the Property pursuant to Rule 2327(4) justifying intervention.

---

11. Hankin claims that the May 25, 2005 joint motion was neither served on Receiver Timoney nor Hankin, and that counsel who had jointly represented Hankin and Realen in the Additional Actions deliberately concealed the joint motion from Hankin.

While Hankin has sold the Property to Realen, Hankin has not divested itself of all legal and equitable interest in the Property. In fact, litigation over the Property and the agreed upon purchase price is ongoing. The additional purchase price is contingent upon zoning approvals for the development of the Property. The greater the level of development allowed by the zoning appeal, the greater the additional purchase price. Hankin has also filed an action seeking to rescind the purchase agreement with Realen and re-take possession and title of the Property. Under these unique circumstances, Hankin maintains a viable legal interest in the manner in which the Property will be developed. Therefore, I believe that Hankin should be permitted to intervene.