In Re: Appeal of PENN–DELCO SCHOOL DISTRICT from the Decision of the Board of Assessment Appeals of Delaware Co. in Connection with Premises at Knowlton Road, Aston Township, Delaware County, Pennsylvania owned By Haines & Kibblehouse, Inc., Relating to the Final Real Estate Assessment as of January 2004 for Folio No. 02–00–01345–00 & No. 02–00–01905–00.

Appeal of: Haines & Kibblehouse, Inc.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 9, 2006.

Decided July 14, 2006.

Paul R. Ober, Reading, for appellant.

Mark A. Sereni, Media, for appellee.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this tax assessment appeal, Haines and Kibblehouse, Inc. (Taxpayer) asks whether the Court of Common Pleas of Delaware County (trial court) improperly increased the fair market values of two adjacent tax parcels (Subject Properties), which are operated as a quarry. Discerning no error, we affirm.

In February 2003, Taxpayer purchased the Subject Properties for a total of $354,160.00. However, at that time the Subject Properties were assigned a collective fair market value of $474,170.00. After application of a predetermined ratio of 100%, the Subject Properties were assessed at $474,170.00.

Asserting the Subject Properties were under-valued, the Penn–Delco School District (School District) filed two tax assessment appeals with the Delaware County Board of Assessment Appeals (Board). According to Taxpayer, however, it was not notified of the appeals, and it did not participate in the Board's hearing. Nevertheless, the Board denied the School District's appeals, resulting in no change in evaluation or assessment.

Subsequently, the School District appealed to the trial court and served Taxpayer with notice of appeal by mail. Following this notice, Taxpayer fully participated in proceedings before the trial court.[1]

At a status conference prior to trial, the parties agreed to stay the proceedings pending disposition of *Vees v. Carbon County Board of Assessment Appeals,* 867 A.2d 742 (Pa.Cmwlth.2005). Following this Court's decision in *Vees* in February 2005, the trial court lifted the stay over Taxpayer's objection and scheduled a trial for Monday, July 11, 2005.

Three days before the trial, Taxpayer received a supplemental report prepared by the School District's expert real estate appraiser, Dennis M. Kelly (Appraiser). This report set forth an updated opinion of the Subject Properties' fair market values for the 2004 and 2005 tax years.

At the trial, Taxpayer objected to Appraiser's supplemental report based on the timing of its disclosure. The trial court overruled the objection, but ordered that the record remain open for an additional 20 days to provide Taxpayer an opportunity to submit a response to Appraiser's supplemental report.[2] Nevertheless, Taxpayer declined to submit a response to the supplemental report.

Ultimately crediting Appraiser's testimony as the only expert testimony presented, the trial court sustained the School District's appeals. Applying Appraiser's testimony and a fluctuating predetermined ratio,[3] the trial court ordered the collective tax assessment increased as follows:

| Tax Year | Fair Market Value | Tax Assessment |
|---|---|---|
| 2004 | $ 900,000.00 | $900,000.00 |
| 2005 | $1,020,000.00 | $810,900.00 |
| 2006 | $1,135,000.00 | $822,875.00 |

Subject Properties' estimated fair market values for the 2006 tax year.

---

1. The trial court consolidated the appeals and submitted the matter to a board of arbitrators. Agreeing with the School District, the board of arbitrators ordered the Subject Properties' tax assessment values increased. Taxpayer appealed to the trial court, which scheduled a trial *de novo.*

2. Due to the timing of the appeal and the extension granted to Taxpayer to respond to Appraiser's supplemental report, the trial court also accepted evidence concerning the

3. The predetermined ratio in Delaware County for the 2004 tax year was 100%, for the 2005 tax year was 79.5%, and for the 2006 tax year is 72.5%. Reproduced Record (R.R.) at 177a–78a. Significantly, Taxpayer does not dispute the amount or application of the predetermined ratio in this appeal.

■ Tr. Ct. Verdict dated 8/31/05; Reproduced Record (R.R.) at 177a–78a. Taxpayer's appeal to this Court followed.[4]

On appeal, Taxpayer raises five issues for our review. Specifically, Taxpayer argues the trial court: (i) lacked jurisdiction to hear the School District's tax assessment appeals; (ii) illegally spot reassessed the Subject Properties; (iii) prematurely lifted the stay following our decision in *Vees;* (iv) improperly admitted Appraiser's supplemental report; and, (v) issued a decision contrary to the evidence. We address these issues in order.

## I.

Taxpayer first contends the School District's failure to serve notice of the Board's hearing divested the trial court of jurisdiction for a *de novo* appeal. This argument fails for several reasons.

■ First, it is unclear whether or not Taxpayer received notice of the hearing before the Board. This is because Taxpayer never called any witness, offered any affidavit, submitted any exhibit, or proffered any stipulation to the trial court to prove this claim. Assuming the claim is true, however, it is not the responsibility of the School District to provide notice. On the contrary, it is the Board's responsibility to provide notice of any hearing it schedules. Section 8(d) of the statute known as the Second Class A and Third Class County Assessment Law (Law),[5] 72 P.S. § 5349(d). Thus, any defect in hearing notice was not the result of a failure of the School District to perform a legal duty. Concomitantly, the remedy sought by Taxpayer, dismissal of the School District's *de novo* appeal to the trial court and loss of its statutory appeal rights, is not appropriate.

■ Second, the appropriate remedy for proved defective service is remand for a new hearing before the Board. Section 11 of the Law, 72 P.S. § 5350b, provides in pertinent part: "[n]o defect in service of any such notice shall be sufficient ground for setting any assessment aside, but, upon proof thereof being made, the taxable person or taxing district shall have the right to a hearing before said board relative to said assessment...." Significantly, Taxpayer spurned this statutory remedy, preferring instead to seek outright dismissal. Having failed to request a remand for a Board hearing, it cannot now complain that it did not participate in a hearing before the Board.[6]

---

4. In a tax assessment appeal, our review is limited to determining whether the trial court abused its discretion, whether it committed an error of law or whether its decision is supported by substantial evidence. *Sims v. Berks County Bd. of Assessment Appeals,* 891 A.2d 816 (Pa.Cmwlth.2006). Moreover, the trial court's findings are entitled to great deference, and its decision will not be disturbed absent clear error. *Hershey Entm't & Resorts Co. v. Dauphin County Bd. of Assessment Appeals,* 874 A.2d 702 (Pa.Cmwlth.2005).

5. Act of June 9, 1931, P.L. 1379, *as amended.*

6. Taxpayer also briefly argues Section 18 of the Law, 72 P.S. § 5350i, is unconstitutional to the extent it establishes the trial court's appellate jurisdiction and permits the prosecution of a tax assessment appeal without notice to the property owner. Section 18 of the Law provides:

> The corporate authorities of any ... school ... who may feel aggrieved any assessment of property or subjects of taxation for its corporate purposes, shall have the right to appeal therefrom in entirety or by individual assessments in the same manner, subject to the same procedure, and with like effect as if such appeal were taken by a taxable with respect to his assessment....

Of course, while Section 18 of the Law clearly establishes the trial court's subject matter jurisdiction over a tax assessment appeal, the Section does not in any way permit an appeal to the trial court without notice to a property owner. Indeed, Taxpayer received

■ Lastly and most importantly, any lack of notice for the Board's hearing did not prejudice Taxpayer and was therefore harmless. Thus, although Taxpayer apparently did not participate in the Board's hearing, the Board denied the School District's appeals. Therefore, the Subject Properties' collective assessment remained at the pre-appeal rate, and no harm is evident. Further, Taxpayer participated fully in the many subsequent proceedings during the *de novo* appeal. These proceedings included arbitration and award, robust motions practice, status conferences, and, ultimately, a *de novo* trial. As a result, Taxpayer received notice and a full opportunity to be heard before the trial court. It was during this stage that the Subject Properties' collective assessment was for the first time increased.

## II.

■ Taxpayer next argues the trial court's order increasing the Subject Properties' tax assessment constituted an illegal spot reassessment in violation of the uniformity clause of the Pennsylvania Constitution and the equal protection clause of the United States Constitution. Taxpayer also argues the trial court's order increasing the Subject Properties' collective assessment constituted deliberate, purposeful discrimination in effect. Both arguments lack merit.

■ The uniformity clause of the Pennsylvania Constitution, Article VIII, Section 1 provides, "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." The equal protection clause of the United States Constitution directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A taxpayer alleging that the administration of a tax violates its rights to be taxed uniformly with others of its class must demonstrate deliberate, purposeful discrimination in the application of the tax before constitutional safeguards are violated. *Vees; Appeal of Armco, Inc.*, 100 Pa.Cmwlth. 452, 515 A.2d 326 (1986).

In *Vees*, this Court addressed the validity of a property reassessment prompted by a school district's appeal. There, a school district initiated a tax assessment appeal on a property recently sold for an amount significantly higher than the fair market value set during the latest county-wide reassessment. After the county assessment board sustained the school district's appeal, the property owners appealed to the trial court, arguing the manner in which the school district selected the property for appeal constituted an improper spot reassessment in violation of the uniformity and equal protection clauses.

In rejecting this argument, we drew a critical distinction between those situations dealing with allegedly defective assessments by an entity clothed with the power to assess, and those situations dealing with allegedly defective assessment appeals. As to the latter, we examined the statutory provisions allowing school districts the same appeal rights as property owners and the cases applying those statutory provisions. We held the exercise of assessment

---

notice of School District's appeal to the trial court here. Thus, Taxpayer's due process challenge lacks merit.

Moreover, Taxpayer waived its challenge to the constitutionality of Section 18 by failing to inform the State Attorney General as required by Pa.R.A.P. 521. *See Petition of City of Clair-*

*ton,* 139 Pa.Cmwlth. 354, 590 A.2d 838 (1991) (the failure to notify the Attorney General of a constitutional challenge to a statute results in the waiver of that issue). It is also noteworthy that we cannot find where in the record this specific challenge was submitted to the trial court before or during trial.

appeal rights uniformly available to all interested parties did not amount to deliberate, purposeful discrimination, and, therefore, did not offend the uniformity clause as a matter of law.

Likewise, in *In re Springfield School District*, 879 A.2d 335 (Pa.Cmwlth.2005), this Court held a property's revaluation initiated by a school district's appeal did not violate the uniformity or equal protection clauses. There, a local school district filed tax assessment appeals on two commercial properties, which the Board denied. The trial court concluded the school district's methodology for the selection of tax assessment appeals, which focused almost entirely on commercial properties, was arbitrary and capricious, and the methodology violated tax uniformity and equal protection guarantees.

On appeal, this Court reversed. We determined the statutory appeal powers under Section 18 of the Law were identical to those discussed in *Vees*. We also discerned no statutory limit on the method used by property owners or school districts to select which assessments to appeal. Applying *Vees*, we concluded an appeal pursuant to Section 18 does not amount to deliberate, purposeful discrimination as a matter of law.

Here, as in *Vees* and Springfield, the controversy was initiated not by a body with powers essential to the assessment process; instead, the case was initiated by the School District, which lacks those powers. Therefore, its appeal does not amount to an illegal spot reassessment. Also as in *Vees* and Springfield, the School District's use of a statutory appeal mechanism, which is available to property owners and school districts alike, does not constitute deliberate, purposeful discrimination in violation of the uniformity clause.

■ For both legal and factual reasons, we also reject Taxpayer's argument that a

tax assessment appeal which has an unintended discriminatory effect violates constitutional safeguards. Legally, the "innocent discriminatory effect" theory finds no support in the majority opinion in *Vees* or the Court's opinion in Springfield. Indeed, it is hard to imagine any successful tax assessment appeal that could escape a charge of non-uniformity or discriminatory effect. Factually, the trial court made no findings here of any discriminatory effect of the School District's appeals.

## III.

■ Taxpayer next argues the trial court erred in prematurely lifting the stay following this Court's decision in *Vees*. In particular, Taxpayer contends the parties agreed to a stay for the duration of all appellate proceedings in *Vees*. Taxpayer contends that because a petition for allowance of appeal was pending, the trial court's decision to proceed to trial was erroneous and was a violation of the parties' agreement.

Taxpayer failed to prove the trial court lifted a stay in violation of the parties' agreement. Significantly, the parties do not agree as to the terms of their undertaking. In fact, the School District strongly asserts that it agreed to a stay pending disposition of *Vees* before this Court only, not for the duration of all appellate proceedings. Moreover, the record lacks any memorialization of an agreement. Thus, the trial court did not enter an order approving any stay agreement, and neither party spread a stipulation upon the record. In the absence of such specification, we cannot conclude the trial court lifted the stay in violation of the parties' agreement.

■ A trial court possesses broad discretion to grant or deny a stay or place a matter in abeyance, and this Court will not interfere with this determination ab-

sent an abuse of discretion. *Gwynedd Props., Inc. v. Bd. of Supervisors of L. Gwynedd Twp.*, 160 Pa.Cmwlth. 599, 635 A.2d 714 (1993). Within its discretion, a trial court possesses the inherent power to stay a case during the pendency of another matter which may resolve the stayed case. *Id.*

■ Here, Taxpayer fails to cite any authority requiring a trial court to continue a stay until the conclusion of all appellate proceedings in a different matter. Furthermore, Taxpayer fails to allege any prejudice from the trial court's decision to lift the stay. Therefore, we cannot conclude the trial court abused its discretion as to the timing of trial.

### IV.

Taxpayer next argues the trial court erred in admitting Appraiser's supplemental report into evidence because it was not disclosed until one business day prior to the hearing. Taxpayer maintains the timing of disclosure caused prejudice because it lacked sufficient time to prepare proper cross-examination, and the defect was not cured by the trial court's continuance to allow Taxpayer to respond to Appraiser's supplemental report. We disagree.

■ The admissibility of evidence rests largely within a trial court's discretion. *Hooker v. State Farm Fire & Cas. Co.*, 880 A.2d 70 (Pa.Cmwlth.2005). Thus, an appellate court will only interfere with the trial court's admission of evidence upon a clear showing of an abuse of discretion. *Id.*

■ Although the rules of civil procedure do not control statutory appeals, case law related to disclosure of expert reports informs our current analysis. The primary purpose of the rules for pre-trial disclosure of expert opinions is to avoid unfair surprise to an adversary concerning the facts and substance of an expert's proposed testimony. *Daddona v. Thind*, 891 A.2d 786 (Pa.Cmwlth.2006). The question of whether the permissible limits of testimony were violated is determined on a case by case basis, and the essence of the inquiry is fairness. *Id.* The question is whether the discrepancy between the expert's pre-trial report and his trial testimony is of a nature that would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response. *Id.* The opposing party must suffer prejudice as a result of the testimony going beyond the fair scope of the expert's report before admission of the testimony is considered reversible error. *Id.*

■ Here, the trial court properly admitted Appraiser's supplemental report for two reasons. First, the report used the same evaluation criteria and methodology as Appraiser's initial report, which was provided to Taxpayer approximately two years before trial. In fact, the supplemental report simply used updated information. As a result, Taxpayer was on notice of the criteria and methodology employed by Appraiser, and it enjoyed ample time to prepare an adequate cross-examination.

In addition, the trial court held the record open providing Taxpayer an opportunity to present evidence in response to the supplemental report. Despite this opportunity, Taxpayer declined to submit any evidence. In light of Taxpayer's failure to pursue an available remedy, we cannot conclude the trial court abused its discretion by admitting Appraiser's supplemental report.

### V.

Lastly, Taxpayer argues the trial court's decision is contrary to the evidence. More specifically, Taxpayer maintains the trial court erred in accepting Appraiser's opinion because it was based on the values of

properties which were not sufficiently comparable, on inconsistent valuation adjustments for those properties, and on an inadequate inspection of the Subject Properties. In addition, noting Appraiser's concession on cross-examination that the Subject Properties were 40% depleted from the on-going quarry operation, Taxpayer contends the trial court erred in not reducing Appraiser's valuation opinion by 40%. Again, we disagree.

■■■■ When performing *de novo* review, the trial court is the ultimate finder of fact. *Guthrie Clinic, Ltd. v. Sullivan County Bd. of Assessment Appeals,* 898 A.2d 1194 (Pa.Cmwlth.2006). As fact-finder, the trial court maintains exclusive province over matters involving the credibility of witnesses and the weight afforded to the evidence. *Id.* As a result, this Court is prohibited from making contrary credibility determinations or reweighing the evidence in order to reach an opposite result.

■■■ Here, Taxpayer stipulated to Appraiser's qualifications as a licensed real estate appraiser, and it specifically agreed to his presentation of expert opinion. R.R. 79a. Clearly, Appraiser's opinion concerning the valuation of the Subject Properties was competent and admissible. In addition, Taxpayer's various arguments address the credibility and weight of Appraiser's testimony, not its admissibility. As such, we decline Taxpayer's invitation to review the trial court's credibility decisions and to second-guess the weight afforded the evidence.

Accordingly, we affirm.

### ORDER

AND NOW, this 14th day of July, 2006, the order of the Court of Common Pleas of Delaware County is hereby **AFFIRMED.**